Next case on the calendar is Arthur v. Garland. I believe we have the government appearing by way of video. And we have counsel for Mr. Arthur in the courtroom. Mr. Gilson, you have reserved two minutes for rebuttal. That's correct. Yes, Your Honor. Go ahead. Good afternoon and may it please the Court. My name is Stu Gilson. I have the privilege of representing the petitioner in this case, Mr. Godfrey Arthur. Mr. Arthur is a 66-year-old lawful permanent resident who has lived in the United States for over 50 years. The government seeks to remove Mr. Arthur on the basis of a single misdemeanor conviction from 2009 for endangering the welfare of a child under New York penal law section 260.10. In affirming his removal, however, the Board of Immigration Appeals committed three significant legal errors below. First, the BIA improperly applied its 2010 standard for the crime of child abuse retroactively to Mr. Arthur's 2009 conviction. Second, the BIA ignored its own precedents and policies for a matter of MAM and a matter of JRA for evaluating petitioners such as Mr. Arthur with mental competency issues. And third, the BIA failed to consider Mr. Arthur's arguments and evidence regarding how his mental competency issues affected his fear-based claims for relief, specifically asylum, withholding of removal, and deferral under the Convention Against Torture. Counsel, before you get into that, and thank you for outlining those points, could you point to where in the record, in the administrative record, the issue was preserved before the BIA about your client's removability? I thought there was a line there somewhere to the effect of your client reserves the right to contest his removability but then doesn't contest the right, or doesn't contest the removal. We would submit that he did submit reserve the ability to challenge his removability and his motion to reopen, but more importantly, Your Honor— Where? Just tell me where in the record, like a page size. Because, again, all I saw was this notion, I reserve the right to raise this issue, but I don't see where he then followed up and exercised that right and then raised the issue and presented these arguments to the BIA. Because you can't simply say to the BIA, hey, I might raise these before the Court of Appeals, but you can skip them now. You have to argue them before the BIA. So where did that happen? If Your Honor may, I could get the record site for you on my rebuttal, but the important point and the reason it was not, that argument has not been waived, is because the BIA did, in fact, address it on the merits in its decision. And as this Court held in Waldron, by addressing his removability on the merits, the BIA would have excused any prior failure to exhaust or to waive it. And the Waldron case is actually very procedurally similar to this one, where the allegation was that the petitioner did not raise the issue in his first appeal but then tried to raise it again in his second. And this Court held that because the BIA chose to address that on the merits, the argument had not been exhausted or waived. And is that discretionary on our part at that point, to excuse the exhaustion, or is that mandatory to excuse the failure to exhaust? I would argue in this case, Your Honor, it's mandatory because we think it raises a constitutional issue, and that cannot be waived. Now, turning to the first point, Mr. Arthur's retroactivity argument, I wanted to explain why this Court's recent decision in Marquez v. Garland is distinguishable and has not changed the analysis from Mr. Arthur's case. Now, in Marquez v. Garland, this Court determined that Mr. Marquez's BIA could retroactively apply its 2010 standards to crime and child abuse to Mr. Marquez's 2006 condition. That, however, is distinguishable from this case because in Marquez, the Court found it important that with the time that he pled guilty, the BIA's only guidance came from the matter of Rodriguez-Rodriguez, which this Court determined in Marquez was only dictative. However, when my client pled guilty in 2009, just the year before, in 2008, this Court had determined that, sorry, not this Court, the BIA had issued a precedential decision expressly defining the crime of child abuse in matter of Velasquez. But they left open the Velasquez-Guerrero decision, I think, which you're referring to. Yes. In Marquez, we said that, and I think it's accurate, left open the question of whether there was an actual harm to the child requirement with respect to the child abuse definition. So isn't that, in fact, left open by Velasquez-Guerrero? There was a concurring opinion saying you're leaving this open, this is unclear. Go ahead. Thank you, Your Honor. I'm glad you asked that question because I actually think this is an important point for a matter of Velasquez-Guerrero. As Your Honor noted, the concurring opinion did note that that issue was left open in a footnote. The concurring opinion primarily focuses on whether or not the definition of the crime of child abuse is broad enough to encompass the entire phrase in the INA, which is crime of child abuse, child neglect, or child abandonment. In the footnote, the concurrence, as Your Honor noted, also notes that it leaves open this question of whether or not it subsumes, whether or not it's also broad enough to encompass child endangerment statutes. Now, importantly, the majority only said that it was leaving open the first point, the major issue that the concurrence focused on, which is whether or not that phrase, crime of child abuse, neglect, and abandonment, represented a unitary concept. The majority in Velasquez-Guerrero did not indicate that it was leaving open. Where in the opinion does it say for a child endangerment crime, no proof of actual harm is required? Your Honor, I see that we're out of time. May I briefly answer your question? Yes. So we think it comes from a few things in the matter of Velasquez-Guerrero opinion itself. We think it comes from— You're not out of time, by the way. You have two minutes left. Oh, do I? I'm sorry. I'm glad you clarified that. I'm new to the presider role, but I noticed that. I saw the light change. I wanted to make sure I wasn't overstepping it. So we think it comes from several things in the matter of Velasquez-Guerrero. It comes from not only the paragraph where the court defines, offers the definition of child abuse. In the following sentences, as this court noted in Marquez, it says, at a minimum, this definition encompasses. And then it goes on to list several examples, all of which involve harm, physical harm, mental harm, and sexual abuse. I also think it's important to look at the preceding paragraph, where the court discusses what the sort of weight of authority held at that time. And in particular, I would highlight the last sentence where the court says, similarly, the most recent edition of Black's Law Dictionary provides as its principal definition of child abuse, intentional or neglectful physical or emotional harm inflicted on a child, including sexual molestation. So we think that a fair reading of the matter of Velasquez-Guerrero is that it did attain an actual harm requirement. And importantly, that is how the Ninth Circuit interpreted it in Forgoes or Beholden. That's also how Judge Carney interpreted it in her dissent for Matthews v. Barr. I think Marquez just rejected that argument, though. So Marquez rejected that. But importantly, this court can still rule in my client's favor, even if it finds that it was not an abrupt departure because it would have been reasonable for my client to rely on that reading, as the Ninth Circuit did. So in other words, even if this court were to rule against me on the second factor, whether or not there was an abrupt departure, this court could still find that it was reasonable for my client to have relied on it. We think that there's enough in this opinion that would have been a reasonable reading for my client to have, and that's underscored by the fact that that is, in fact, how the Ninth Circuit read it at the time. Importantly, the government itself concedes that the first and fourth factors go in my client's favor. So even if this court were to disagree with me on the second factor, and I want to pause there for a moment because the government itself agrees that SORM announced a new standard. So the fight on the second factor is a matter of degree. I agree with you. I think it's the reasonableness of the reliance on what you're pointing to. Yes. Okay. So just to be clear, that would be the way in which we would distinguish Marquez for our client. All right. Now you are out of time. I'm out of time. But you do have two minutes for rebuttal. And I think we have Ms. Bayram by video. Can you hear us okay? Yes, I can. Can you hear me okay? Yes. Go ahead. Thank you. May it please the Court, I am Sarah Bayram, appearing on behalf of Merrick B. Garland, the United States Attorney General. The Court here should deny the petition for review. Petitioner is removable under this Court's precedential decisions in both Matthews and Marquez. And the Board did not abuse its discretion in denying reopening where Petitioner failed to show the outcome would change or that he was deprived of a full and fair hearing. Accordingly, the Court should deny this petition for review. First, going to the removability aspect, Petitioner is removable for his conviction. That, of course, was decided in Matthews. And here we have Marquez v. Garland, which controls this case here with respect to the retroactivity prong as well. And mainly for the same reasons. First, matter of sorum wasn't an abrupt departure. It wasn't a surprise. You know, as the Court said in Marquez and is true here as well, matter of sorum was merely filling a void that everyone was on notice existed, that there was this gap with respect to whether or not it applied to only crimes with actual harm or not. And so that was obviously still unsettled by the agency when sorum came out, and the agency then settled that question in SORA. Now, with respect to reasonable reliance, here it is our position that the petitioner cannot show any reasonable reliance here for much the same reasons as in Marquez. Arthur can point to no rule that he reasonably could have relied on, and that's mainly because there was no definitive answer at the time that he pled guilty about whether or not actual harm was required. So in 2009, it was still an open question about, you know, whether or not actual harm was required, and poor precedent wasn't settled there. Here, you know, at the time we had Velazquez-Herrera, and of course it wasn't clear if there was actual harm, and the definition that Velazquez-Herrera set out was a minimum. They didn't set a ceiling. They set a baseline. At a minimum, these are the actions, and left open that there could be additional harms and prohibited conduct that would fall within. And, of course, the concurrence discussed that, so everyone was on notice. The court here had not given Chevron deference to Velazquez-Herrera when the petitioner pled guilty, so that also contributed to it being not a settled question, and I would also point this court to an unpublished decision in 2009, Guzman v. Holder, that was issued just days before petitioner pled guilty, where this court remanded a conviction under New York Penal Law 260.10 because it was unclear whether or not the prohibited conduct fell within Velazquez-Herrera. And so this was all very unsettled, and it was unsettled at the time that he pled guilty, and so he couldn't have had reasonable reliance on it. And just one further point, that, you know, actual reliance isn't required, and, of course, if there is actual reliance, the Supreme Court has said that can strengthen the party's case. But, again, here, that's a reasonable person's standard, and given the unsettled nature of whether actual harm was required, given the unsettled nature of the state of the law at the agency, and which this court recognized, it simply would not have been reasonable, a reasonable person, you know, to have relied on that in the course of determining, you know, whether or not to plead guilty. And on that note, you know, petitioner isn't really helped there either, because, again, it's the reasonable person, and given the nature and the unsettled of the law, then it wouldn't have been reasonable. And then, finally, just briefly turning to the reopening, we don't believe that there is an abusive discretion there. He failed to show prejudice. He failed to show a full and fair hearing. And, you know, he simply can't show, you know, that the outcome would have been different, particularly where he raises, you know, with respect to his fear-based claims, where he raises a specific asylum challenge based on his mental health for the first time, now in his motion to reopen, but hasn't fully fleshed it out, hasn't shown prima facie eligibility, and hasn't even submitted a new asylum application attached to his motion, which he was required to do under the regulations. So if there are no further questions, I'll conclude. On the second issue, in terms of his ineffective assistance claim, he does also argue that if the immigration judge had been aware of this personality disorder that interfered with his ability to answer questions and think in a linear way, that the immigration judge may not have found that his failure to take responsibility for the underlying conviction, his lack of remorse, was one of the reasons for denying his petition. Do you want to address that? Yes, Your Honor. It's our position that that simply doesn't hold weight for a number of reasons. First, his claim that his lack of remorse results from this psychological disorder, his mental health issues, that's something he's raising for the first time in his brief to this Court. So he hasn't brought that before the agency. And second of all, there's no evidence in the record, with respect personally to Petitioner, that his mental illness manifests itself in a way that he cannot show a lack of remorse. There's no evidence specifically identifying that as a condition or a symptom for him. And third, he raises a lot about this struggling to explain himself, his inability to express himself, and things of that nature. But again, I would note that he has had multiple opportunities before the Board, and even before this Court, he is represented by counsel who can certainly help him. And if he was truly remorseful or sorry or wanted to express any type of acknowledgement, that's something he could have done in a written pleading, in a brief, before the Court or this agency, where he is assisted by counsel of his choosing, who can admittedly help him express himself and to do those things. So he hasn't shown any effort to make that acknowledgement at any point, even with the assistance of counsel. And there's no reason to believe that if this case were reopened, he's suddenly now going to make that, you know, that he's now suddenly going to make that acknowledgement of remorse that we've never seen before. And so, you know, there's just no indication that he's going to be doing that now. And for those reasons, you know, the Board's motion to reopen, or the Board's denial of reopening, wasn't an abuse of discretion, certainly with respect to cancellation, you know, which it denied in the exercise of discretion. If there are no further questions, thank you. And Mr. Gilson, you have two minutes in rebuttal. Thank you, Your Honor. Three brief points on rebuttal. First, the citation record that Judge Nardini asked for is AR 22. Secondly, I wanted to clarify that, or respond to the government's argument that it was not reasonable to rely on the state of the law at the time. As I mentioned, we do think it was reasonable to rely, particularly given that's how the Ninth Circuit, in fact, interpreted it. I would also like to direct this Court's attention to the Seventh Circuit's decision in Velazquez-Garcia v. Holder, which found that the law did not need to be completely settled at the time for a petitioner to rely on it. I also think that the government today makes a very similar argument to the one that then-Judge, now Justice Gorsuch, rejected in Diniz v. Robles v. Lynch, where there the government argued there was some risk that the BIA may later change the rule, and Judge Gorsuch rejected that in Diniz v. Robles v. Lynch and found that it was reasonable for the petitioner in that case to rely on the rule. I would also like to briefly respond to the government's citation to this Court's unpublished decision in Guzman v. Holder in 2009. Although this Court did remand to the BIA to determine what the definition of child abuse was, Guzman v. Holder is very clear that they're doing so because they think it was the BIA's province in the first instance to address what the crime of child abuse meant. Guzman, however, notably strongly suggests that it would have been unreasonable for the BIA to then define crime of child abuse as they actually did, and as broadly as they actually did. So anyone reading Guzman at the time would have thought that the answer would have been that crime of child abuse would not have swept in crimes such as child endangerment statutes. And lastly, just to briefly respond to the mental competency issue, we do think that this is an important issue before this Court, and the issue here is that the BIA simply failed to address its own guidance for a matter of JRA for how to evaluate those issues, and contrary to what the government said, that was cited in my client's motion to reopen. Thank you, Your Honor. Well, the lawyer didn't. It's really an ineffective assistance claim, though, because the lawyer never raised that issue, right, before the IJ. That was never raised, right? It's essentially that the lawyer was ineffective for not raising it, or am I missing something? I actually think it's different, Your Honor, because you raised this in the posture of a motion to reopen. Right. So it's not just an ineffective assistance of counsel claim. That is one avenue in which it could be addressed, but it's also on its own a due process claim, and we think that's how it was raised below and how this Court should decide it. All right. Thank you very much. Thank you both. We'll reserve the decision. Have a good day.